IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| SHAWN GIESWEIN | § § § | |
| *Plaintiff*, | § § | CASE NO.  5:20-CV-00051-RWS-JBB |
| v. | § § | |
| UNITED STATES OF AMERICA ET AL., | § § § | |
| *Defendants*. | § § § | |

## ORDER

Plaintiff Shawn Gieswein, an inmate proceeding *pro se*, filed the above-styled and numbered civil action complaining of alleged violations of his constitutional rights. The case was referred to the United States Magistrate Judge in accordance with 28 U.S.C. § 636(b). Although Plaintiff presents the lawsuit as being "on behalf of all non-violent prisoners in FCI Low Texarkana," the case has not been certified as a class action.

### I.  Background

Plaintiff asserted that on March 29, 2020, the Attorney General of the United States ordered the Federal Bureau of Prisons to release non-violent at-risk prisoners. Docket No. 1 at 2. Plaintiff also stated that, under the CARES Act of 2020, the Director of the Bureau of Prisons shall promulgate rules regarding the ability to conduct visits through video teleconferencing and by telephone, free of charge, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau. *Id.* Plaintiff complained of the conditions at FCI-Texarkana, arguing that the prison is overcrowded with no room for social distancing, prisoners lack proper cleaning supplies, no inmates have been quarantined, and there have been no free video visits or

phone calls. *Id.* at 2–3. He asks for $1 million for each day that the Director refuses to release non-violent inmates and denying them access to telephones or teleconferencing, an additional $50 million if one of those inmates contract Covid-19, and an additional $250 million if one of those inmates dies from Covid-19. *Id.* at 3.

## II. The Report of the Magistrate Judge

After review of the pleadings, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed for failure to state a claim upon which relief may be granted. Docket No. 8 at 4–5. First, the Magistrate Judge stated that the Attorney General did not order the release of non-violent at-risk prisoners, as Plaintiff claimed; instead, the CARES Act of 2020 set up a framework whereby inmates could seek compassionate release. *Id.* at 2–3. The Magistrate Judge explained that this portion of the Act allows the court where the prisoner was convicted, upon motion by the Director of the Bureau of Prisons or by the prisoner upon exhaustion of administrative remedies, to reduce a term of imprisonment, including imposing a term of probation or supervised release with or without conditions which does not exceed the unserved portion of the original term of imprisonment, after considering the factors set out in 18 U.S.C. §3553(a) to the extent applicable. *Id.* The Magistrate Judge explained that there is no provision in the law by which a prisoner can secure release, through compassionate release or otherwise, in a civil rights lawsuit; in fact, the Magistrate Judge observed that Plaintiff had been denied compassionate release from the court where he was convicted, and this denial was affirmed on appeal. *Id.* Thus, the Magistrate Judge concluded that Plaintiff's contention that this Court should order his release failed to state a claim upon which relief may be granted. *Id.* at 4. Second, the Magistrate Judge explained that Plaintiff's request for monetary damages for inmates who might contract Covid-19 in the future failed to state a claim because allegations of possible future damages are speculative

and cannot support claims for compensatory damages. *Id.* at 3–4. Finally, the Magistrate Judge determined that Plaintiff's claim concerning free teleconferencing or phone calls failed to state a claim upon which relief may be granted because prisoners have no constitutional right to free phone calls. *Id.*

### III.   The Plaintiff's Objections

In his objections, Plaintiff states that the CARES Act of 2020 and the Attorney General's order were intended to lower the population of the Bureau of Prisons to help prevent the spread of Covid-19 and to allow more room for social distancing. Docket No. 9 at 1. He claims that the Bureau of Prisons "refused to transfer eligible inmate[s] that meet the criteria to home confinement" and that the Bureau was "ordered to send inmates to home confinement that [were] at a minimum or low-security prison, that [have] a non-violent conviction, [with] 2/3 of their sentence completed and [having a] vulnerability. Mr. Gieswein and 48 percent of the prison population in Texarkana Texas FCI meet that criteria, but the [Bureau has] refused to transfer [those] inmates." *Id.*

Plaintiff asserts that FCI-Texarkana was locked down in March of 2020 and has remained on lockdown ever since. *Id.* He says that there were Covid-19 outbreaks in November of 2020 and July of 2021. *Id.* Plaintiff claims that 98 percent of inmates in the prison have contracted Covid-19 and two inmates have died. *Id.* He states that he himself contracted Covid-19 during the November outbreak and was seriously ill for two weeks. *Id.* He was locked down in D-2 Wing for five months and had very little contact with his family, and no access to video teleconferencing was provided. *Id.*

After again complaining that the Department of Justice and the Bureau of Prisons refused to reduce the prison population as ordered by the Attorney General, Plaintiff argues that the

Magistrate Judge was incorrect in saying that the CARES Act was passed to set up a framework whereby inmates could seek compassionate release; rather, he maintains that the Act "suspends the length of time an inmate can be placed on home confinement established under 18 U.S.C. [§] 3624." *Id.* at 2. He contends that 48 percent of the inmates in the prison could have been released because they met the criteria set out in the Attorney General's order of March 2020. *Id.*

Plaintiff states that during the lockdown, he was "mentally and physically injured," stating that he has gained weight due to lack of exercise and the ability to move around, his wing was locked down without a TV or access to a phone or computer, he could not program to gain extra good time, and there was a shortage of guards during the outbreaks. *Id.* He contends that he should get monetary compensation as well as extra good time. *Id.*

### IV.    Discussion

Research has failed to disclose any order from the Attorney General, or other authority at any time, ordering that prisoners be released or transferred to home confinement. On March 26, 2020, U.S. Attorney General Bill Barr issued a memorandum to the Director of the Bureau of Prisons entitled "Prioritization of Home Confinement As Appropriate in Response to Covid-19 Pandemic." This memorandum instructed the Director to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." In so doing, the Attorney General instructed the Director to consider the totality of circumstances to each individual inmate, the statutory requirements for home confinement, and a non-exhaustive list of discretionary factors, including age and vulnerability to Covid-19, security level of the holding facility, the inmate's conduct in prison, the inmate's score under PATTERN, a risk assessment tool, whether the inmate has a demonstrated and verifiable re-entry plan which would prevent recidivism and maximize public safety, and the

inmate's crime of conviction. *See* Memorandum for the Director of Bureau Prisons from the Attorney General (Mar. 26, 2020), https://www.justice.gov/file/1262731/download (last accessed Dec. 4, 2022). To the extent Plaintiff argues that the Attorney General ordered the Director of the Bureau of Prisons to send vulnerable inmates to home confinement who were at a minimum or low-security prison, with a non-violent conviction and two-thirds of their sentence completed, his objection is without merit.

Although Plaintiff again complains that the prison did not supply video teleconferencing in November of 2020 and he had "very little contact" with his family, he offers nothing to controvert the Magistrate Judge's conclusion that there is no constitutional right to free telephone calls. Plaintiff does not contend that he was denied all contact with his family or that he had no alternative means to contact them. *See generally Overton v. Bazzetta*, 539 U.S. 126, 127 (2003) (noting that "visitation alternatives need not be ideal; they need only be available"). In any event, the Fifth Circuit has held that restrictions upon visitation—presumably including video visitation—do not implicate any constitutionally protected liberty interests. *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (explaining that visitation privileges are a matter subject to the discretion of prison officials). Thus, this objection is without merit.

Plaintiff's complaint concerning the conditions of confinement at FCI-Texarkana concludes that the prison is overcrowded, there is no room to keep the required six-foot distance, inmates lack proper cleaning supplies and have communal bathrooms and showers, some guards do not wear face masks, and the prison has not tested inmates and does not have the ability to test the guards. *See generally* Docket No. 1. These allegations fail to state a claim upon which relief may be granted. *See*, *e.g.*, *Rogers v. Cochran*, case no. 5:20-cv-185, 2021 WL 1877385, report adopted at 2021 WL 1872584 (N.D. Tex. 2021) (stating that general allegations of overcrowding

and cells which are too small, which could lead to the spread of Covid-19, do not set out viable constitutional claims); *Smith v. Brown*, case no. 3:20-cv-3304, 2021 WL 707167, report adopted at 2021 WL 693655 (N.D.Tex. 2021) (explaining that conclusory allegations of overcrowding and failure to social-distance, causing the plaintiff to contract Covid-19, did not set out a constitutional claim); *Lehn v. Hartwig*, 13 F.App'x 3 89 (7th Cir. 2001) (reasoning that there is no constitutional right of access to a computer). Likewise, Plaintiff's general and conclusory allegations concerning denial of exercise fail to state a claim upon which relief may be granted. *See Hernandez v. Velasquez*, 522 F.3d 556, 560–61 (5th Cir. 2008); *Haralson v. Campuzano*, 356 F.App'x 692 (5th Cir. 2009). The Magistrate Judge correctly determined that Plaintiff failed to state a claim upon which relief may be granted.

The Court has conducted a careful *de novo* review of the portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. § 636(b)(1) (requiring a district judge to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is therefore

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (Docket No. 8) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled civil action is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted. Finally, it is

**ORDERED** that all motions which may be pending in this civil action are **DENIED**.

Case 5:20-cv-00051-RWS-JBB   Document 11   Filed 12/05/22   Page 7 of 7 PageID #: 38<sub>/</sub>

**So ORDERED and SIGNED this 5th day of December, 2022.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

Page **7** of **7**<sub>/</sub>